Yes, North American Company for Life and Health Insurance versus Caldwell Good morning. Thank you for the opportunity to be here today on behalf of my client, North American. There are five points that bear emphasis as we consider the district court's ruling in this case. First, the district court ruled, of course, that a death cannot be a suicide. It is not by my own hand. It is by the conductor. Exactly. We cited several Florida cases, Your Honor, citing just those cases in front of a car and in front of a train as examples that are commonly understood to be suicide without that insured inflicting personally the blow. If I hire Dr. Kevorkian to administer the medication that will cause my death, assisted I think that does follow from the district court's decision, Your Honor. It really comes down to this, and I'll go through the five points in a moment, but it really does come down to this. Does suicide have the plain, ordinary meaning that most people seem to think it has? Florida law controls, right? Excuse me? Florida law controls here, right? Yes. It's a Florida insurance policy issued to a Floridian, right? Absolutely. And under Florida law, we interpret an insurance policy according to the ordinary meaning of its terms to the extent that they're not defined by the policy itself, right? Exactly. That's exactly right. I don't mean to be critical of the district court other than to advance the cause today, but really in four significant respects, the district court departed, I would say, radically from basic Florida precepts of insurance law. The first is we could stop right with the Black's Law Dictionary. You know, it's the first step in ascribing meaning to undefined words in a policy is to turn to legal and non-legal dictionaries. And the Florida Supreme Court has often turned specifically to Black's Law. And the Black's Law Dictionary definition of suicide- You don't even have to do that. You could look at Merriam's, Webster's. Exactly. Look at English language, legal dictionaries, before, during, after, none of them say suicide has to be by your own hand. Exactly. And it's not, it really, it also doesn't make, there's a good reason why they don't. It wouldn't really make sense. The happenstance of the instrumentality that you would choose shouldn't, of course, dictate the outcome. You know, the other element of this is, of course, Florida law also has gone out of its way to define what suicide is apart from the definitions, right? I mean, we've got, you know, really it's been through the trio of cases that we've focused on. The Nash decision, the CM Life decision, the Singletary decision. And Florida, by the way, is no outlier in this respect. It's right in lockstep with the rest of the country. But what emerges from that is a simple test, I would say. There has to, first and foremost, be intent to end one's life. That's usually the big debate in suicide cases, of course. Was it an accident? Was there some reasonable explanation other than suicide? Or were they intending to set out to end their life that day? Then there has to be some kind of volitional act, you know, to make sure that the insured was acting on it. Any kind of volitional act, like we had certainly in this case. And then lastly, in the CM Life case comes in and it says, suicide, therefore, is what happens when the conduct that's undertaken has a reasonable and probable outcome of death. And certainly there's no question, based on the pleadings and the allegations and the complaint, that that's what happened here. So that's another respect in which the district court departed from. Let me ask you a question about what you just said. Certainly. It's clear that you have to evince the intent to take your own life. So that's the mens rea. What we're talking about is the actus rea. Who actually has to do the killing? Does it have to be by your own hand? Or can it be, by design, you have someone else do it for you, as Judge Pryor said, whether it's a Kevorkian or you jump in front of a train or whatever, or you lead a cop to shoot you because you threatened him with a deadly weapon. My question is, if you're right, this would be a fact question for a jury on causation, wouldn't it? Or are you suggesting that you're entitled to judgment as a matter of law without it going to a fact finder? Certainly not on this record yet, Your Honor. In other words, I have read more suicide cases than you could shake a stick at. And there are several where that issue of intent is resolved on summary judgment, and there are many where it inherently has to be resolved by the jury. We don't have a fully developed record yet. No, I'm not asking about the issue of intent. Even assuming arguendo that the evidence was overwhelming to evince his intent to take his own life. You have a second part to this, right? You need this actus rea. You have to show there was some act that if he didn't do it by his own hand, he caused. So there had to be some reasonable foreseeability that if he aimed a weapon at the police officers and even fired a shot, well, it's pretty foreseeable that a cop in defense of his own life is going to shoot him back and arguably kill him. Is that a fact question here on this record? I don't think so. If we were to assume for sake of discussion that there was no fact question as to intent, and I do think one day we will get to that point. No, because the reason is this. It's so closely linked to the statement of how he was going to go about killing himself. And there is, in other words, he said to his wife, of course, I'm going to force the police to shoot me. That's how I'm going to do it. But of course, I think I take your point to be. And then even all we have is the 12 C order of the district court. True. Which you're seeking to reverse and remand and then leave it to the judge and the parties to proceed from there. It's my expectation, your honor, that upon remand, we would be able to build a record that would answer the bell on summary judgment as to all points. It's because it's that kind of an unusual case. We're not there yet. Certainly. And that's certainly we're not asking the court to do that. I think it would be improper at this juncture to do that. But I do foresee that in the future. And, you know, the other thing I just want to mention briefly, it's also important, you know, because of Florida's emphasis on interpreting words according to how the quote everyday man on the street would incorporate it. That's why, your honors, we have examples of how people from all walks of life view suicide by cop, of course, as a form of suicide. That's another element of Florida law that I think was overlooked by the district court that really weighs heavily here. And, you know, big picture, there's another tenant of Florida law that was I think we did violence to in this case. And that is that we can't, in the guise of interpretation, interpret a policy in a way that it does violence to the party's intent, right? We had a suicide clause. It plainly says there's no payment of death benefits if there's suicide. To pay benefits under these circumstances where it is so obvious that this individual, and it is sad. I hate to be talking about this today and I don't want to appear callous. But where it's so obvious that this individual set out to kill himself, it would just do violence to the ordinary meaning of the clause and the whole purpose of it. And I think that James v. Gulf decision is an important one. I mean, that seems to me like it is actually the argument you're making now is pulling in the factual issue that we aren't at yet. So I'm not sure that that's really your best argument. Okay, then I can move on, your honor. Can I ask you a different question? Judge Pryor asked you about using dictionary definitions as a way to discern that suicide by cop is indeed suicide. Taking your life, whether you use your own hand or create the circumstances where it's overwhelmingly likely that someone else will take your life at your design. Is there anything in Florida, since after all, we're sitting in diversity jurisdiction here, that comes close to answering the question or would it be fair to say that this issue is an issue of first impression in Florida? Well, yes and no. And what I mean by that is I'm not aware of any decision in Florida that comes close to saying specifically, oh, and by the way, it doesn't have to be by, you know, the person inflicting the fatal blow themselves. However, the breadth of the Florida case law in describing any volitional act that's perpetrated in furtherance of an intent to commit suicide, number one, strongly connotes that it would encompass that because it's so broad in its scope. And secondly, the court's matter of fact acknowledgement of those train cases and those automobile cases as suicide, just as the average Joe on the street would as well. So in that sense, your honor, I do think it's the case, but certainly nothing precise. So I think the parties would have found that and presented it to you. How about outside of Florida? What case law is there that answers the square question that you have here, insurance policy, suicide, you don't recover, suicide by cop? Cop is suicide, QED, you don't recover. Remarkably, there is not a single decision in the country. My speculation on that is because rarely would that be challenged. In my experience, the real fighting point is always intent, right? It's not this issue. I think most people, when that has happened, probably went on their way without challenging it. That's just speculation. There is the case in Maryland that have been, you know, received considerable attention in the briefs, but that really was not, that was not a suicide by cop case. There wasn't, I can tell there's not a presidential opinion of any American court on this precise question, none whatsoever, which is, I mean, if that being the case and this being an important question, we got an amicus on it and this is an important insurance question. Why shouldn't the question be answered by Florida Supreme Court rather than by us? Should we certify the question and send it to them and say we respectfully request your view on this? I don't think so for this reason. In my view, Florida law is very clear. It gives you the guiding principles you need to make a good decision. That is, again, because all you need is intent to commit suicide. You need any volitional act whatsoever whose reasonable and probable consequence is death. The pleadings in this case, and of course we're here on a motion for judgment in the pleadings, answers the bell on all those points. And Florida principles are so strong, Your Honor, that I don't think it's necessary at all to submit this to the Florida Supreme Court. Thank you very much. Thank you so much. Okay. Mr. Hoover. Thank you, Your Honor. I want to start by just addressing head-on the very first question you asked, Mr. Heaton, which was if we were to interpret the district court's ruling and take it to an extreme, basically you said if someone jumps in front of a train, that that would not be suicide. And I would beg to differ . . . It's suicide by train. It could be suicide by train. By taking . . . it wouldn't be by your own hand, right? It wouldn't be by your own hand in the sense that the train is going to hit you, but . . . The district court would grant judgment on the pleadings against the insurer. I disagree because I think that when you talk about the term by your own hand, that's not the actual word that you need. What about Kevorkian? Perfect example. Assisted suicide is not the same, and I'll tell you why. In the assisted suicide case, you have two people working together towards a common goal. It's prearranged. They get together. They say, here's what we're going to do. In a situation of suicide by cop, this is confrontational. You know, Justin didn't call the police and say, hey, come over. Let's have a shootout. But here's the problem, right? Assuming for purposes of the question, and I . . . you know, obviously this is an open, factual issue, but just for purposes of the question, assume that he intended to have the cops kill him. If he intended to have the cops kill him, it's very easy to know how to do that, right? You bring out a gun. You don't put it down when the officers tell you to, or you run towards them with a gun, and it's pretty clear what's going to happen next. There's really not any question about what the response will be. So if there's no question as to what the response will be, that being, you will be shot, why is that any different from running in front of the train? So let's talk about the train. So with a train situation, obviously, if I jump in front of a train, it's not like the conductor makes a decision. The conductor, he's in charge of the train, but he can try to stop it. You're not going to stop a train on a dime. So the train really has no part of the process other than it's what hits you. Right. So it seems to me like you have to focus on a couple of things. One, the intent of the person who is allegedly trying to commit suicide. Two, objectively, whether it's likely that that's going to happen. I mean, if the guy comes out and, I don't know, takes a gun or something and is in a room all by himself, maybe that's a different story and he slips and falls, you know, then that's a different story, you know, and dies because he's hit his head or something. But it seems to me that if you have those two things, then you have suicide. Why is that not suicide? Why do we not focus on the intent of the person and whether objectively the activity that that person chooses to engage in might accomplish that intent? In a suicide by cop situation, I think it's because the person who ultimately ends up shot doesn't necessarily control the outcome. And I understand what you're saying, that it may be reasonable to think that the police have one option, which is to shoot, but the reality is there are other options. For example, in this case, when Justin walked up to the police, he was unarmed. A train conductor has other options, depending on how far away the train is. I mean, I'm assuming... A train could be stopped if you're far enough away. Well, I'm assuming for the... And you're laying on the tracks waiting to be run over, right? Yeah. And if they run over you, I would still say that that's suicide because the train wasn't able to stop. It doesn't all of this boil down to the factual question of probabilities. If you evince the intent, the question here is how likely is your conduct going to create the circumstances so that you will be killed at the hand of some other person or some other object? It's just a question of probabilities. And that seems to me to be a fact question, and we're not there today, but I can certainly imagine a circumstance where, and you can help me with this, where I evince the intent to kill myself. I say it in a note. I tell my wife. I kiss my kids goodbye. And I do it instead of putting a gun to my head and pulling the trigger. I call the police. I have a long arm. They come up and I say, come and get me. They say, put down the gun. Put down the gun, as Judge Rosenbaum put it to you. And I don't. And they fire and kill me. Maybe they won't kill me, in which case there's no suicide. There's no death. It ain't a question of homicide, suicide. There's just no death. But isn't this all a question of probabilities for a jury to struggle with? But what you're saying is as a matter of law, we ought to say, regardless of the high probability that my intent will be actuated, that can't be suicide because it's going to be done by a cop. Logically, I don't understand why that's so. I mean, I think that just based on the definition of what a homicide is, a homicide is when one person kills another person, that my argument is that even in a situation of a suicide by cop, it's still a homicide. And even if you look up the term suicide by cop. But even that being the case, why are they mutually exclusive in every single situation? Well, I think you have to, for purposes of trying to figure out what a term in an insurance policy needs, I think you have to have either or to make a decision in a case like this. But why is that the case? I mean, there are lots of terms that overlap with each other to a certain extent and we still are required to construe them according to their ordinary meaning. We don't say that we're not going to include part of the ordinary meaning because another word also covers that. Understood. And I think what the point I was trying to make is that when you have a situation where the term is ambiguous. So, for example, suicide by cop can mean suicide, right? But if you look at its synonym listed right there in Black's Law Dictionary, it also says victim precipitated homicide. If we didn't use the word suicide by cop, we only use the word victim precipitated homicide to describe these events. I think there would be fewer people to go with the man on the street test thinking that that would be a suicide. Doesn't it just become a matter of semantics? Then it's not a matter of the actual meanings of the words. It's a matter of what we label it, which doesn't seem like that's a viable way of interpreting policies. Yeah. And I think my point is that I don't really understand why we're even looking at the term suicide by cop. The term in the policy that was defined or not defined was suicide. And so, I look at it, when I look at legal and English language definitions of suicide, which is the term in the policy, it looks to me like you lose. And that's because you believe that it includes third-party acts, if I understand. Well, they don't. None of those definitions say that it has to be by your own hands. That's a gloss from the district court. But isn't that the common sense definition though? I mean, before today, did you think that suicide would be something that... Yeah. Do I think that running and purposely jumping in front of a train to commit suicide is a form of suicide? Yes. Do I think that hiring Dr. Kevorkian is a form of suicide? Yes. Do I think that telling my parents goodbye, calling my spouse and saying, I intend to have law enforcement kill me. She calls the police to tell him he wants to die by law enforcement. He intends to commit suicide by cop. They show up, they try to get him to surrender peacefully. He runs to a truck to retrieve a rifle, lifts it up to shoot at them. And they do exactly what he predicted to everyone. And this is what we have to construe that all these allegations and the because this is judgment on the pleadings. And then they, in response, just as he predicted, commit him. Did I think before this controversy ever arose that that was a form of suicide? Yes. And then I look at Black's Law Dictionary and I look at the Oxford English Dictionary, and they actually have definitions for suicide by cop where they describe them as a form of suicide. And then they proceed to say, but it's actually homicide behind that. And I think that's why you're seeing a motion. Homicide by whom? Homicide by the police officer. No, that's not what those are saying. It's victim precipitated homicide. You don't, you don't prosecute the police officer who does his duty in protecting himself, his fellow officers and the public from the shooter. I understand what we're talking about, justifiable homicide. It's still a trap. But wouldn't it be, I take it everybody agrees that you got to look to there's no definition in the policy itself of suicide. So you got to look extrinsically. And in Florida, the law says, among other things, to determine common meaning of suicide. Well, if you look at, and Judge Pryor cited the Oxford English Dictionary, it defines suicide and includes within the examples it gives suicide by cop. And then it goes on to define that as an incident in which a person intent on dying manipulates the police into fatally shooting him or her. This is a method of taking one's own life. And then if you look at Black's Law Dictionary, and that was cited to you, they also included suicide by cop. Admittedly, they did it as a sub entry, but I don't think that makes any real difference here. And they defined suicide by cop as requiring the, you got to evince the intent to die. You got to understand consciously the finality of the act. And you've got to confront law enforcement officials with behavior so extreme that it compels that officer to act with deadly force. And that's not the end of it. You'll find suicide by cop in a host of other dictionaries. That being the case, wasn't it error for the trial judge on the 12C to grant the motion? Not in my opinion. I thought she nailed it. And here's why. Because at the end of the day, even though we can talk about what those definitions are, it still was an act of homicide to shoot Justin and kill him. It was one person killing another person, which is technically a suicide. I agree with you that a person jumping in front of a train is a suicide. I agree with you that assisted suicide, Dr. Forkin, is a suicide. Would Dr. Kevorkian commit homicide in that situation? He could be charged with it, but I think under Florida law, I think under Florida law, it could go either way. I mean, because you have an assisted suicide statute. But again, that makes the point, right? Because the point here is that just because it may be also described as a homicide, that doesn't necessarily mean that you can't describe it as a suicide. And so that seems like a problem with that argument. So let me just back up and finish. I think that I agree with you guys that a person jumping in front of a train is a suicide. I agree Dr. Kevorkian is a suicide. I do not agree that suicide by cop is a suicide for the simple reason that in those examples, if I jump in front of a train that's right here, this is all my fault. No one else is involved. I mean, the train can't stop. It's coming at full speed. It can't get out of the way of me. So no one else has participated in my death. Yeah, but with Dr. Kevorkian, someone else has. Okay, if I'm in an assisted suicide situation, we've gotten together beforehand. We've worked this out. We're going to get together. You're going to kill me. Why does that matter though? Why does that make a difference? Because you keep telling me it makes a difference because then it's a homicide. But here's the problem in Kevorkian's case, it's a homicide too. Why does it matter? I, I, well, in my opinion, it matters because when you get into a situation of the cops, this is not a collaborative effort working towards the same goal. Why does that matter with, when you look at the ordinary meaning dictionary definitions of you're raising? So one of the cases that we talked about was Pfister, the Maryland case where a person enlisted her friend to hold the gun while she tried to commit suicide. And in the end that the Maryland court basically said, look, that is not suicide because that person had a choice not to fire the gun. He made that conscious choice to fire the gun. And that's why it is a homicide and not a suicide. And so my point is it's just different though, because there was nothing that the person who died in that case did to compel and, you know, inevitably cause the person who pulled the trigger to pull the trigger. And that is totally distinguishable from the situation when somebody goes out with the intent of causing officers to fire at them by engaging in conduct that necessarily compels them to do so for their own protection and the protection of the others in the vicinity. Why is that not totally different? Well, I think you're, you're, you're getting into, I would have to get into the facts to address why, but it, for example, in this case, he was unarmed when the police shot him, right? That would be one example of showing how the other person's volitional act, what they decide to do the person who dies. And he had no control allegations of the complaint were that he had raised the rifle to start shooting at them after they shot him first. Well, and they continued to shoot. Yes. Yeah. So, okay. Um, I think we understand your argument, Mr. Hoover. Um, Mr. Heaton, do you have any rebuttal? Okay. I don't hear any. Thank you. Let's move to the last case.